MICHAEL BAILEY
United States Attorney
District of Arizona

SETH T. GOERTZ
Assistant U.S. Attorney
Arizona State Bar No. 031645
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: seth.goertz@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>vs.<br><br>Silvester Ruelas,<br><br>               Defendant. | No. CV-20-00372-PHX-JAT (JZB)<br><br>**GOVERNMENT'S REPSONSE TO DEFENDANT'S REQUEST FOR RELIEF PURSUANT TO 28 U.S.C. § 2255** |

### I.  Introduction

The Court should deny Mr. Ruelas' request for post-conviction relief under 28 U.S.C. § 2255 because even when granted every possible benefit, he cannot articulate a cognizable basis for relief. Mr. Ruelas has alleged three grounds for relief; two are premised on allegations of prosecutorial misconduct and the other on ineffective assistance of counsel. As to his claims regarding prosecutorial misconduct, each fails as a matter of law and fact: his failure to qualify for safety valve had nothing to do with government prosecutors, but with his inability to meet the statutory requirements, and he has provided no evidence to support his claim that the government constructively amended his indictment. His claim for ineffective assistance of counsel likewise fails. Rather than addressing the voluntary nature of his plea, which is all that he may do after freely admitting to the offense, he instead second-guesses the presentation of his defense.

Nowhere does Mr. Ruelas deny that he managed a dark net drug distribution conspiracy, nor does he argue that he entered into the plea involuntarily or that it was otherwise inappropriate. As a result, he has failed to make even a threshold showing that he received ineffective assistance of counsel. Post-conviction relief under § 2255 is an extraordinary remedy and Mr. Ruelas has not demonstrated that it is appropriate. The Court should deny his request.

## II. Background

On September 25, 2018, Mr. Ruelas pleaded guilty to one count of conspiracy to possess with the intent to distribute cocaine, heroin, and methamphetamine, and one count of money laundering. Doc. 187[1] at 4-5; Doc. 132. Mr. Ruelas did so after leading a sprawling internet-based drug distribution network, which utilized dark net marketplaces to ship drugs from Arizona to locations all across the country. Doc. 187 at 5. Over a two-year period, Mr. Ruelas was responsible for operating the drug acquisition, drug storage, drug distribution and money laundering portion of the operation. Doc. 187 at 6-7. He did so by recruiting at least two associates to acquire drugs, package drugs, ship drugs, and even open shell corporations and fraudulent bank accounts, through which he funneled the proceeds of the drug trafficking organization. *Id.*

Mr. Ruelas also used a business, VIP Motorsports, to store the drugs he directed his couriers to obtain. From there, he and his associates prepared dark net drug orders and then mailed them to customers across the country. Ledgers seized from VIP Motorsports in 2017 evidenced shipments to Arkansas, Illinois, Massachusetts, Missouri, Montana, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Texas, Washington, and West Virginia. Doc. 189 at 2. During the investigation, investigators also seized packages filled with drugs that were on their way to Florida, Georgia, Kansas, Minnesota, Missouri, Nevada, New York, Oregon, and Pennsylvania. *Id.*

---

[1] All of the record citations referred to herein relate to the underlying criminal case: CR-17-00317-PHX-JAT.

The amount of drugs in each package ranged from a gram of methamphetamine, heroin, and cocaine, to a single package that contained 84 grams of heroin. *Id.*

Mr. Ruelas and his drug distribution network were able to operate undetected for a two-year period by utilizing encrypted technology and cryptocurrency to sell drugs and launder the proceeds. The dark net, in particular, is commonly used to frustrate law enforcement and to cloak criminal networks. Similarly, by utilizing cryptocurrency, Ruelas and his organization were able to further hide their activities by engaging in near-anonymous transactions. And while there is no evidence that Mr. Ruelas was otherwise violent, a post-arrest search of his home revealed that he was storing nine firearms in his daughter's bedroom—including an AK-47, a .50 caliber sniper rifle, a shotgun, and various handguns. Also inside his daughter's bedroom, investigators found a large amount of heroin under her bed, a laptop that the organization used, several pieces of expensive jewelry, and gold, silver, and platinum bars. Doc. 187 at 10.

At his change of plea hearing, Mr. Ruelas admitted to the offense in full. Before doing so, he confirmed that he had discussed the plea with his attorney, that he had fully considered the consequences, and believed the plea was in his best interests:

> THE COURT: Did you read and go over the plea agreement carefully with your attorney before you signed it?
>
> MR. RUELAS: Yes, we did
>
> THE COURT: And did you believe you understood it at the time you signed it?
>
> MR. RUELAS: Yes.
>
> THE COURT: And do you understand it now?
>
> MR. RUELAS: Yes.
>
> THE COURT: Did your attorney answer all of your questions about the plea agreement?
>
> MR. RUELAS: Yes, ma'am.
>
> THE COURT: And do you believe that going forward with the plea agreement is in your best interest?
>
> MR. RUELAS: Yes, ma'am.

> THE COURT: And have you had enough time to talk with your attorney and consider that?
>
> MR. RUELAS: Yes.
>
> THE COURT: And are you satisfied with the services of your attorney?
>
> MR. RUELAS: Yes, ma'am.

Doc. 271 at 4-5.

Mr. Ruelas further confirmed that he understood the maximum penalties for each count in the plea agreement; including the ten-year mandatory minimum for Count 1, and the twenty-year maximum sentence for Count 5. Doc. 271 at 7-9. Mr. Ruelas also said that he knew his total offense level at sentencing was going to be based upon a stipulated marijuana equivalence of 30,000 to 90,000 kilograms. *Id.* at 12-13. The court then explained, and Mr. Ruelas acknowledged, that the plea agreement contained a broad appellate waiver, which required Mr. Ruelas to give up "almost all of [his appellate] rights." *Id.* at 16-17. The court was clear that Mr. Ruelas could not waive any appeals based upon ineffective assistant of counsel or prosecutorial misconduct, but nevertheless emphasized that both "rarely happen[ ] in federal court anywhere," and as a "practical matter," he was "probably giving up" all of his appellate rights. *Id.*

After a thorough review of the plea agreement and its consequences, the Court proceeded to review the plea agreement's extensive factual basis—Mr. Ruelas, in turn, responded with a comprehensive admission. Mr. Ruelas admitted that he partnered with his co-defendant, Kevin McCoy, to further the efforts of a then-existing dark net drug sales operation [*Id.* at 22]; he admitted that he fulfilled drug orders and shipped drugs throughout the country [*Id.*]; he admitted that he instructed a subordinate to open fraudulent bank accounts and create fake businesses in order to launder the proceeds of the dark net drug sales operation [*Id.* at 23-24]; that he rented space at a legitimate business, which he used as a stash house to store heroin, methamphetamine, and cocaine [*Id.* at 24-25]; and that he paid his co-conspirators for their work. *Id.* at 27-28.

Ultimately, the Court found that Mr. Ruelas' total offense level was a 43; but rather than sentencing him to life in prison as recommended by the sentencing guidelines, the

Court imposed a twenty-year sentence. Doc. 267 at 11, 28. The Court explained that it was "satisfied that the nature of this crime, the untold consequences of this crime, and the devastation produced by this crime, warrant this sentence." *Id.* at 28-29. Before concluding, however, the Court again confirmed that Mr. Ruelas was satisfied with his counsel (he said he was), and emphasized that the plea agreement generally waived his right to appeal (he said he understood). *Id.* at 17, 30-31.

A year later, Mr. Ruelas moved for post-conviction relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel and a conglomeration of prosecutorial misconduct claims. But even when granted every benefit as a *pro se* filer, each claim fails in fact and law.

**III.   Legal Argument**

   **a. Mr. Ruelas' claim for ineffective assistance of counsel merely second-guesses the preparation of his defense, but says nothing at all about his guilty plea**.

Having fully admitted to the offense, Mr. Ruelas may only challenge his counsel's effectiveness as it relates to the "voluntary and intelligent" nature of his guilty plea. The Ninth Circuit has long recognized that "[a] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988); *see also Tollett v. Henderson,* 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient]."); *U.S. v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005).

Mr. Ruelas must therefore demonstrate that his "(1) counsel's representation fell

below the range of competence demanded of attorneys in criminal cases, and (2) 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir. 2005) (quoting *Hill v. Lockhart,* 474 U.S. 52, 58-58 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining that "a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases") (internal quotations omitted).[2]  In order to do so, it is "not sufficient" to show that in "retrospect [counsel] may not have correctly appraised the constitutional significance of certain historical facts," or even "that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *McClure v. Thompson*, 323 F.3d 1233, 1246 (9th Cir. 2003) ("In any ineffectiveness of counsel case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") (internal quotation omitted)). Mr. Ruelas must instead demonstrate that his counsel's advice was so unreasonable that it actually infringed on his "ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 980 (9th Cir. 2004); *United States v. Reed*, No. CV062030PHXSMMHCE, 2008 WL 11447930, at *2 (D. Ariz. Sept. 29, 2008).

Mr. Ruelas fails on both accounts—he has not provided evidence to demonstrate his counsel's representation fell below a reasonable standard or that, but for those errors, he would have proceeded to trial. In the first instance, Mr. Ruelas fails to argue that if the deficiencies he highlighted were cured or had not occurred at all, he would have gone to

---

[2] *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

trial. He instead alleges only generic and speculative attacks regarding the performance of his attorney.

The sum of Mr. Ruelas's complaint is that his counsel "failed to subject the government's case to strict adversarial testing." According to Mr. Ruelas, his counsel (i) failed to subpoena the plea agreement of his co-defendant, Kevin McCoy, which allegedly contained factual inaccuracies and stipulations that "amended the charges . . . with respect to . . . culpability and role in [the] offense," and (ii) did not call and/or interview any witnesses or co-defendants in preparation for trial and at sentencing. *See* Amended § 2255 Motion at 5.

Even for a *pro se* filer, Mr. Ruelas' allegations are impossibly vague. He does not identify a single, specific fact from Mr. McCoy's plea agreement, let alone any that were inaccurate, nor does he explain which stipulations actually "amended the charges against him" or how these unnamed stipulations did so. Moreover, it does not appear that Mr. Ruelas could have obtained Mr. McCoy's plea agreement even if he wanted to because Mr. Ruelas pleaded guilty plea a *month before* Mr. McCoy. *See* Docs. 132 and 147 (Ruelas pleaded guilty on September 25, 2018, and McCoy pleaded on October 24, 2018).[3] More importantly, it remains Mr. Ruelas' burden to justify the extraordinary relief he seeks by identifying which facts and which stipulations have prejudiced him. Beyond that, he must also demonstrate that his counsel acted unreasonably in failing to identify those facts and stipulations, and further, that if his counsel had done so, he would not have pleaded guilty. Mr. Ruelas has wholly failed to do so.

Mr. Ruelas also claims that Mr. Kimerer failed to call any witnesses or co-defendants to testify in preparation for trial or sentencing. But once again, Mr. Ruelas has failed to support his burden with anything other than speculative conjecture. As written, it is difficult to identify what exactly Mr. Ruelas expected from any particular witnesses, let

---

[3] Similarly, McCoy was sentenced six months *after* Mr. Ruelas. Docs. 190 and 243.

alone who he wished to call as a witness or what they would have said to prevent his guilty plea. Worse, his own attorney, Mr. Kimerer, acknowledges that he attempted to call and interview the witnesses Mr. Ruelas identified, but they were either co-defendants who were likewise involved in the conspiracy, were individuals who could not be found, or otherwise provided testimony so unhelpful that it would not have benefitted Mr. Ruelas. *See* Affidavit of Michael D. Kimerer, attached as Exhibit A, at ¶ 10. Without identifying a single specific witness or the testimony they would have offered, Mr. Ruelas' empty allegations fail to get off the ground.

In reality, it appears that Mr. Ruelas instructed his attorney to obtain the best possible plea agreement because he wanted to avoid a trial. According to his counsel, Mr. Ruelas quickly "confessed to the charges against him" and asked that his attorney work towards "a minimum sentence" because Mr. Ruelas "did not want to go to trial." *See id* at ¶ 4. And it appears that Mr. Kimerer did just that, quickly setting a meeting with the government regarding a potential cooperation agreement, arguing for safety valve all the way through to sentencing, and obtaining a plea agreement in which the government agreed to dismiss five of the seven counts against Mr. Ruelas.

Without identifying a *single fact* that would have caused him to forgo his guilty plea and proceed to trial, Mr. Ruelas has failed to establish a viable claim for ineffective assistance of counsel. The Court should deny his claim.

**b. Mr. Ruelas presents two barely-cognizable allegations of prosecutorial misconduct, but each fails in law and fact**.

Like his claim for ineffective assistance of counsel, Mr. Ruelas has failed to substantiate his allegations of prosecutorial misconduct. Mr. Ruelas' plea agreement states that claims for prosecutorial misconduct are defined according to Section II.B of Arizona Ethics Opinion 15-01. *See* Doc. 132 at 6 ("This waiver shall not be construed to bar an otherwise-preserved claim of . . . 'prosecutorial misconduct' (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015))). For its part, Arizona Ethics Opinion 15-01 provides that Arizona prosecutors—both state and federal—may not insist, or otherwise

condition plea agreements, on a defendant's future waiver of claims involving ineffective assistance of counsel or prosecutorial misconduct. *See.* Ariz. Ethics Op. 15-01, attached as Exhibit B. Arizona Ethics Opinion 15-01 further states that, "[p]rosecutorial misconduct includes (but is not necessarily limited to) destroying evidence, suborning perjury, and knowingly failing to turn over exculpatory evidence." *Id.*

Here, Mr. Ruelas alleges that the government committed prosecutorial misconduct by denying him safety valve relief and by making stipulations with one of his co-defendants, which constructively amended his own indictment. But Mr. Ruelas does not support these conclusory allegations with any other details, evidence, or facts—thereby leaving the government and this Court with nothing to decipher his generic claims.

It is, however, clear that the government had nothing to do with Mr. Ruelas' failure to qualify for safety valve relief because he was statutorily ineligible. He was ineligible in the first instance because he admitted to recruiting and supervising subordinate members of his drug trafficking conspiracy and was therefore a leader/manager/supervisor. *See* 18 U.S.C. § 3553(f)(4); Doc. 271 at 22, 27-28; Doc.267 at 9-10. In addition, the government believed gun(s) were used in the connection with the offense after discovering (inside of his daughter's bedroom) nine firearms, half-a-kilogram of heroin, and a laptop used to access the dark net. *See* 18 U.S.C. § 3553(f)(2); Doc. 187 at 10. Finally, the government discredited Mr. Ruelas' explanation for how he sourced the drugs that his organization sold and took the position that he failed to fully and truthfully explain the offense as required by 18 U.S.C. § 3553(f)(5). *See* Doc. 267 at 21. During the free-talk Mr. Ruelas references, he insisted that he obtained all the drugs his organization sold from street-level dealers, as opposed to a larger drug trafficking organization. The government did not believe this was possible given the volume and variety of drugs sold; as a result, it ended the free talk and took the position that Mr. Ruelas failed to fully and truthfully explain the offense as required by 18 U.S.C. § 3553(f)(5). *See* Doc. 267 at 21 (explaining the government's position that "[i]t's impossible . . . to get the variety of the drugs, the amounts, and meet the demands of a dark net marketplace drug trafficking organization from just street level

dealers").

Mr. Ruelas's eligibility for safety valve was also litigated in the PSR and at sentencing. For its part, the PSR concluded that a two-level enhancement was necessary pursuant to USSG §2D1.1(b)(7) for possession of a firearm, and that a four-level enhancement according to USSG §3B1.1(a) was necessary for being an organizer or leader of a criminal organization with five or more people. *See* Doc. 187 at ¶¶ 44, 48. Mr. Ruelas objected to both enhancements, but at sentencing the Court found that each was appropriate and overruled Mr. Ruelas' objections. *See* Doc. 267 at 5-10. Thus, it appears that the only person to blame for Mr. Ruelas' failure to qualify for safety valve is himself.

Mr. Ruelas' final contention is that the government granted his co-defendant, Kevin McCoy, stipulations that constructively amended his indictment. But Mr. Ruelas has not identified a single stipulation allegedly made in his co-defendant's case, nor has he even hinted at what was constructively amended in his indictment. And while it is important to aid *pro se* filers where possible, the relief Mr. Ruelas seeks is extraordinary and it remains his burden to demonstrate that it is appropriate. It was incumbent upon him to substantiate the serious allegations he has levelled against the government, and he as failed to do so. The Court should deny his claim.

Respectfully submitted this 16th day of October, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

 *s/ Seth T. Goertz*
SETH T. GOERTZ
Assistant U.S. Attorney

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on 16th day of October, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and mailed a copy to the Defendant (pro per) at the following address:

Silvester Ruelas (72265-408)
FCI La Tuna
P.O. Box 3000
Anthony, NM 88021-9897


*s/Andrea Flores-Cromwell*
U.S. Attorney's Office